804 F.2d 1403
 HAWTHORNE OIL & GAS CORPORATION, Arcade Enterprises, Inc.,
William B. Burkenroad, Jr., and Republic
Production Company of Texas, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 No. 85-4850.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 4, 1986.
 
 Bernard A. Foster, III, G. William Stafford, Washington, D.C., for petitioners.
 Jerome M. Feit, Sol., F.E.R.C., Joanne Leveque, Joshua Z. Rokach, Washington, D.C., for respondent.
 Ernest J. Altgelt, III, Houston, Tex., for intervenor, Louisiana Gas Systems Inc.
 Petition for Review of an Order of the Federal Energy Regulatory Commission.
 Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Hawthorne Oil & Gas Corp. ("Hawthorne") petitions this court to review an order of the Federal Energy Regulatory Commission (the "Commission"). In 1971 Hawthorne contracted to sell natural gas from the Southwest Gueydan Field in Louisiana to Conoco, Inc. The contract had a primary term of twelve years, terminating June 1, 1983, unless the parties agreed to extend it. Conoco assigned its interest under the contract to LGS, Inc. in 1980. All of Hawthorne's sales under the contract are intrastate sales.
 
 
 2
 In 1977 a dispute arose between Hawthorne and its purchasers over the contract's pricing provisions. Hawthorne sued Conoco and LGS in Louisiana state court. The parties ultimately settled the case. The settlement provided that future sales from three wells--Stelly No. 1, Henry No. 1, and Scanlan No. 1--would be at the price established in section 103 of the Natural Gas Policy Act ("NGPA"), 15 U.S.C. Sec. 3313, until the contract terminated in 1983. The settlement provided further that gas from new wells that qualify would be priced according to NGPA Sec. 102, 15 U.S.C. Sec. 3312.
 
 
 3
 In 1983 Hawthorne and LGS entered into a rollover contract effective June 1, 1983, the day that the 1971 contract terminated. A "rollover contract" is a contract for the first sale of natural gas that was previously sold under an existing contract that expired at the end of a fixed term. See NGPA Sec. 2(12), 15 U.S.C. Sec. 3301(12). The rollover contract provided that LGS would pay Hawthorne the "maximum lawful price" under the NGPA. Section 106(b) of the NGPA, 15 U.S.C. Sec. 3316(b), which applies to rollover intrastate contracts, provides that the maximum lawful price for the first month of a contract shall be "the maximum price paid under the expired contract." NGPA Sec. 106(b)(1)(A)(i), 15 U.S.C. Sec. 3316(b)(1)(A)(i). The statute also allows the rollover contract price to escalate in subsequent months to keep pace with inflation. NGPA Sec. 106(b)(1)(A)(ii), 15 U.S.C. Sec. 3316(b)(1)(A)(ii). The maximum price under the original contract for gas from the three section 103 wells was $2.778 per million BTUs. The maximum price for gas from the section 102 well was $3.421 per million BTUs.
 
 
 4
 In September 1984 Hawthorne petitioned the Commission for an order declaring:
 
 
 5
 [W]here two different prices were paid pursuant to a two-tier pricing provision in an existing intrastate contract when such contract expires, the "maximum price paid under the expired contract" for purposes of determining the maximum lawful price under Section 106(b)(1)(A)(i) of the Natural Gas Policy Act of 1978 ("NGPA") for all gas sold under the rollover contract ... is the higher of the two prices paid under the expired contract.
 
 
 6
 The Commission denied Hawthorne's petition. Hawthorne now petitions this court to review the Commission's order denying their original petition for the declaratory order.
 
 Section 106(b)(1) provides:
 
 7
 In the case of any first sale under any rollover contract of natural gas which was not committed or dedicated to interstate commerce on November 8, 1978, the maximum lawful price under this subsection for such natural gas delivered during any month shall be the higher of--
 
 
 8
 (A)(i) the maximum price paid under the expired contract, per million Btu's, in the case of the month in which the effective date of such rollover contract occurs; and
 
 
 9
 (ii) in the case of any month thereafter, the maximum lawful price, per million Btu's, prescribed under this subparagraph for the preceding month multiplied by the monthly equivalent of the annual inflation adjustment factor applicable for such month; or
 
 
 10
 (B)(i) $1.00 per million Btu's, in the case of April 1977; and
 
 
 11
 (ii) in the case of any month thereafter, the maximum lawful price, per million Btu's, prescribed under this subparagraph for the preceding month multiplied by the monthly equivalent of the annual inflation adjustment factor applicable for such month.
 
 
 12
 15 U.S.C. Sec. 3316(b)(1).
 
 
 13
 Hawthorne argues that in the case of a contract with two price tiers, the language "maximum price paid under the expired contract" must be applied to the contract as a whole, which would result in a price under the rollover contract for the gas in both tiers equal to the maximum price paid under the original contract for the higher priced tier. The Commission argues that the terms "sale" and "such natural gas" in the first paragraph must be applied separately to each tier, which would result in separate prices under the rollover contract for each tier based on the maximum price paid for that tier under the original contract.
 
 
 14
 We first reject Hawthorne's argument that the language of section 106(b) is unambiguous. Neither reading seems unarguably correct. Consequently, we must uphold the Commission's interpretation as long as it is "reasonable." See Young v. Community Nutrition Institute, --- U.S. ----, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986). The original contract was covered by NGPA Sec. 105, 15 U.S.C. Sec. 3315. The Commission's regulations treated the sales under the original contract at section 103 prices and sales under that contract at section 102 prices as different sales. In its order the Commission extended that treatment to the rollover contract.
 
 
 15
 Hawthorne proposes numerous arguments to reject the Commission's approach. Although the NGPA does provide incentives for gas production, that is not an argument for always choosing the interpretation that generates the highest price. The NGPA also has rate ceilings and thus balances the need to provide incentives with the need to control price increases. The Commission's interpretation does not eliminate the difference between sections 105 and 106. Section 106(b) sets a minimum price of $1.00 per million BTUs and also provides for monthly escalation tied to inflation. Finally, it seems plausible that Congress intended to raise the price of all gas sold under a contract to $1.00 per million BTUs without abolishing all other pricing differentials under the contract. We find the Commission's interpretation reasonable within the entire framework of the NGPA.
 
 
 16
 AFFIRMED.